UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

TERRI T.,[1]                                             Case No. 3:19-cv-02034-MK

                Plaintiff,                                    **OPINION**
                                                                      **AND ORDER**

    v.

COMMISSIONER, Social Security
Administration,

                Defendant.
_____

**Kasubhai,** United States Magistrate Judge:

      Plaintiff Terri T. seeks judicial review of the final decision of the Commissioner of the

Social Security Administration ("Commissioner") denying her application for disability

insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security

Act (the "Act"). This Court has jurisdiction to review the Commissioner's decision pursuant to

42 U.S.C. § 405(g). All parties have consented to allow a Magistrate Judge to enter final orders

and judgment in this case in accordance with Federal Rule of Civil Procedure 73 and 28 U.S.C. §

636(c). *See* ECF No. 10. For the reasons that follow, the Commissioner's final decision is

REVERSED, and this case is REMANDED for further proceedings.

---

[1] In the interest of privacy, the Court uses only the first name and last name initial of non-government parties whose identification could affect Plaintiff's privacy.

## PROCEDURAL BACKGROUND

Plaintiff filed an initial application for DIB and SSI on December 22, 2014, with an alleged onset date of June 1, 2011. *See* Tr. 292-297.[2] Plaintiff's application was denied in February 2015 and denied on reconsideration in June 2015. Tr. 165–68; Tr. 171–73. Plaintiff refiled her current application for DIB and SSI on December 15, 2015, with an alleged onset date of June 1, 2011. Tr. 302–07. Following an administrative hearing, the Administrative Law Judge ("ALJ") issued a decision on January 30, 2019, finding Plaintiff not disabled within the meaning of the Act. Tr. 10–29. The Appeals Council denied Plaintiff's request for review making the ALJ's decision the final decision of the Commissioner. Tr. 1–5. This appeal followed.

## FACTUAL BACKGROUND

Plaintiff was 42 years old on her alleged onset date. Tr. 300. She completed high school and one year of college. Tr. 382. She has past relevant work as a medical assistant and certified medication technician. Tr. 68–69. Plaintiff alleges the following disabilities: left shoulder tendinosis and rotator cuff tear, status post-surgery; knee, ankle, and foot derangement/arthritis; obesity; spinal disorder; major depressive disorder with anxious distress; and asthma. Tr. 15.

## LEGAL STANDARD

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). The court

---

[2] "Tr." citations are to the Administrative Record. ECF No. 9.

must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 680–81 (9th Cir. 2005) (holding that the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation"). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–141; 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141. At step three, the Commissioner

determines whether the impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds. *Yuckert*, 482 U.S. at 141.

At this point, the Commissioner must evaluate medical and other relevant evidence to determine the claimant's "residual functional capacity" ("RFC"), an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations [their] impairments impose. 20 C.F.R. §§ 404.1520(e), 404.1545(b)–(c), 416.920(e), 416.945(b)–(c). At the fourth step, the Commissioner determines whether the claimant can perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, they are not disabled; if they cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 146 n.5. At step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ found Plaintiff met the insured requirements of the Act and had not engaged in substantial gainful activity since her current application date. Tr. 15. At step two, the ALJ found Plaintiff had the following severe impairments: left shoulder tendinosis and rotator cuff tear, status post-surgery; knee, ankle, and foot derangement/arthritis; obesity; spinal disorder; major depressive disorder with anxious distress; and asthma. *Id*.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of one of the listed impairments. Tr. 16. The ALJ

found Plaintiff had the RFC to perform a reduced range of light work, with the following

limitations:

> [Plaintiff] can lift and/or carry (including upward pulling) 20 pounds
> occasionally and 10 pounds frequently. She can stand and/or walk
> with normal breaks for a total of 4 hours in an 8-hour workday, and
> she can sit with normal breaks for a total of 6 or more hours in an 8-
> hour workday. She can only occasionally push and pull with her left
> upper extremity. She can occasionally [sic] overhead, front, and
> lateral reach with her left upper extremity. She can occasionally
> climb ramps, stairs, ladders, ropes, and scaffolds. She can frequently
> balance and occasionally stoop, bend, kneel, crouch, and crawl. She
> can have occasional exposure to dust, fumes, odors, chemicals, and
> gases consistent with an office environment. She can have no
> exposure to extreme vibration or workplace hazards, such as
> dangerous machinery and unprotected heights. She needs a brief
> one-minute break to stand and stretch every hour. She can
> understand, remember, and carry out only short, simple routine job
> instructions consistent with a Dictionary of Occupational Titles
> (DOT) GED reasoning level of 2 or less. She can have only
> occasional contact with the public and supervisors. She needs a
> static work environment with few changes in work routines and
> settings.

Tr. 18.

At step four, the ALJ found Plaintiff was unable to perform any past relevant work. Tr.

27. At step five, the ALJ found, in light of Plaintiff's age, education, work experience, and RFC,

a significant number of jobs existed in the national economy such that Plaintiff could sustain

employment despite her impairments. Tr. 28. The ALJ thus found Plaintiff was not disabled

within the meaning of the Act. Tr. 29.

## DISCUSSION

Plaintiff assigns error to four portions of the ALJ's decision. *See* Pl. Op. Br. at 2, ECF

No. 15 ("Pl.'s Br."). First, she asserts the ALJ erroneously rejected her subjective symptom

testimony. *Id.* Second, Plaintiff argues the ALJ improperly weighed the medical opinion

evidence. *Id.* Third, she challenges the ALJ's step five finding. *Id.* Fourth, and finally, Plaintiff

contends ALJ *de facto* reopened the determinations on Plaintiff's prior applications for SSI and DIB. *Id.*

## I.      Subjective Symptom Testimony

Plaintiff argues the ALJ improperly rejected her subjective symptom testimony. *See* Pl.'s Br. at 24–32, ECF No. 15. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion [that] the claimant is not credible is insufficient; instead, the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted).

Social Security Ruling ("SSR") 16-3p provides that "subjective symptom evaluation is not an examination of an individual's character," and requires that the ALJ consider all the evidence in an individual's record when evaluating the intensity and persistence of symptoms.[3] SSR 16–3p, available at 2016 WL 1119029, at *1–2. The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity,

---

[3] Effective March 28, 2016, SSR 16–3p superseded and replaced SSR 96–7p, which governed the assessment of claimant's "credibility." *See* SSR 16–3p.

persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.

The ALJ supplied two rationales for rejecting subjective symptom testimony: Plaintiff's daily activities and gaps in Plaintiff's treatment. Tr. 19–21.

### A.    Daily Activities

The ALJ rejected Plaintiff's testimony based on Plaintiff's activities of daily living. Tr. 19–20. Plaintiff wrote in a 2015 Function Report that she primarily received help from her 10-year-old daughter to "[do] all other chores for [Plaintiff]." Tr. 354. Plaintiff reported that her parents drove her daughter to school, and the support she gave her daughter was more verbal than physical. Tr. 354–355. Plaintiff noted that because she was not able to stand or sit for long periods of time, her pain levels affected how she slept, bathed, used the bathroom, dressed, and prepared meals. *Id.* Plaintiff reported that her household activities were limited to weekly laundry, short drives, and watching television. *Id.*

The Commissioner contends the ALJ identified three inconsistencies which "Plaintiff [did] not meaningfully address" in relation to her daily activities: (1) Plaintiff's treating psychologist's inclusion of a statement about being a volunteer softball coach in the medical evidence; (2) Plaintiff's testimony that she was "easily angered"; and (3) Plaintiff's testimony regarding her medication's side effects of fatigue, irritability, disrupted sleep, and lightheadedness. Tr. 19–20; *see also* Def.'s Br. 4–5, ECF No. 16. After reviewing the record, the Court concludes there were no inconsistent statements that would justify discounting her testimony.

First, the ALJ described Plaintiff's role as "an assistant softball coach" as an identified inconsistency. Tr. 20. The Court recognizes performing the duties related to coaching sports requires significant physical exertion and could qualify as an inconsistency with Dr. Tippett's opined limitations. *See Vitela v. Comm'r of Soc. Sec. Admin.,* 245 F. App'x 715 (9th Cir. 2007) (holding that plaintiff's capacity to perform exertional-level work is a specific and legitimate reason to discount testimony).[4] Plaintiff, however, had merely discussed with Dr. Tippett the prospect of becoming an active softball coach to reduce stress, but ultimately did not end up pursuing the opportunity because of her depression. Tr. 1297. The Commissioner ignores Plaintiff's testimony that further explains that she in fact was not an assistant softball coach but is named because her daughter plays softball and "they like all parents to sign the volunteer form." Tr. 55–56; Tr. 20.

Second, the Commissioner contends that Plaintiff "alleged that she was easily angered and could not get along with others." Def.'s Br. at 5, ECF No. 16 (citing Tr. 353–60; Tr. 393–99). The Court, however, finds no support for Commissioner's contentions. A review of the record reveals the opposite conclusion, including evidence showing Plaintiff as "less social" and "not wanting to be around people due to pain."; Tr. 358; Tr. 399. Accordingly, the Commissioner fails to show an inconsistency in this regard.

Finally, the ALJ explained that while "[Plaintiff] alleged medication side effects of fatigue, irritability, disrupted sleep, and lightheadedness . . . there is mention of only infrequent grogginess with no evidence of any other medication side effects." Tr. 19. The ALJ relied on this finding to reject the Plaintiff's testimony. The Commissioner directs the Court to the ALJ's reasoning, arguing that Plaintiff's allegation of her medication causing "fatigue, irritability,

---

[4] Cited pursuant to Ninth Circuit Rule 36-3.

disrupted sleep, and lightheadedness" is inconsistent because "there is mention of only

infrequent grogginess with no evidence of any other medication side effects." *See* Def.'s Br. at 5,

ECF No. 16. The Court finds, however, the Plaintiff's testimony on this subject and the medical

record of her medication's side effects are consistent. Plaintiff has testified previously that her

medications made her "tired and irritable sometimes, lightheaded . . . [and] mostly fatigue[d]".

Tr. 57. A review of the record shows that Plaintiff has been prescribed a number of medications,

including but not limited to Amitryptiline, Neurontin, Nortriplyine, Methocarbamol, Norco, and

Taztia, and that these medications produce the side effects Plaintiff has alleged. *See, e.g.,* Tr. 384

(listing medications taken); Tr. 423 (listing medications taken);  Tr. 484 (listing medications

taken); Tr. 399 (listing side effects of "drowsiness", "dizziness", and "change in mental

awareness"); Tr. 454 (listing side effects of "fatigue" and "drowsiness"); Tr. 359 (listing side

effects of "sleepiness" and "unclear mind"); Tr. 415; Tr. 423; Tr. 436; Tr. 462; Tr. 469; Tr. 574;

Tr. 633. Accordingly, the ALJ has failed to identify any actual inconsistencies. As such, this was

not a clear and convincing reason as to reject Plaintiff's testimony.

    **B.**    **Gaps in Treatment**

        1.    <u>Gaps in Mental Health Treatment</u>

    The ALJ noted that Plaintiff had "significant gap[s] in treatment" for physical

impairments, and that Plaintiff alleged no mental health impairments "until many years after her

alleged onset date." Tr. 20–21. The ALJ further noted that there was no mention of mental health

symptoms until "late 2015" with a gap until "mid-2016". *Id.* The ALJ's characterization of

Plaintiff's mental health treatment, however, lacks support in the record. Upon a review of the

record, reports of serious mental health impairments began in December 2015 and continued into

2016, indicating Plaintiff continuously sought treatment through the period at issue. Tr. 792,

795–797. Furthermore, and as Plaintiff correctly points out, the courts have long recognized "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *See Nguyen v. Chater,* 100 F.3d 1462, 165 (9th Cir. 1996) (citing *Blankenship v. Bowen,* 874 F.2d 1116, 1124 (6th Cir. 1989)); *see also* Pl.'s Br. at 28, ECF No 15. Accordingly, Plaintiff's mental health treatment history does not undermine her subjective symptom testimony.

### 2.    Gaps in Physical Health Treatment

The ALJ also noted that the record reflects three significant treatment gaps for knee pain: (1) a two-year gap from 2012 until Plaintiff sought treatment in 2014; (2) a second two-year gap from the 2014 treatment visit to mid-2016; and (3) a year-long gap from mid-2016 until July 2017. Tr. 20–23. The Commissioner contends that Plaintiff does "not provide explanation for the significant gaps in treatment history." *See* Def.'s Br. at 5, ECF No. 16.

The Ninth Circuit has held previously that "although a conservative course of treatment can undermine allegations of debilitating pain, such fact is not a proper basis for rejecting the claimant's credibility where the claimant has a good reason for not seeking more aggressive treatment." *See Carmickle v. Comm'r, Soc. Sec. Admin.,* 533 F.3d 1155, 1162 (9th Cir. 2008); *see also Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (holding that "unexplained, or inadequately explained, failure to seek treatment" may be the basis for an adverse credibility finding unless one of a "number of good reasons for not doing so.")

Plaintiff points to 35 instances within the record which provide justification for lapses in treatment. These justifications include: Plaintiff's brief homelessness, lack of funds, lack of

transportation, lapses in insurance coverage, and miscommunication with providers.[5] For instance, in July 2012, Plaintiff had been discharged from therapy due to her "insurance declining authorization of seven visits." Tr. 549. In April 2014, she reported that she had "been kicked out of her house by her boyfriend" and her car was repossessed. Tr. 539. In November 2017, Plaintiff's medical provider reported Plaintiff "[was] still unable to get into physical therapy due to insurance denial." Tr. 1094.

When denying benefits based on noncompliance with treatment, the ALJ "must examine the medical conditions and personal factors that bear on whether [a claimant] can reasonably remedy [their] impairment." *See Byrnes v. Shalala,* 60 F.3d 639 (9th Cir. 1995) (internal quotations omitted). Moreover, the Ninth Circuit has been clear that "[d]isability benefits may not be denied because of the claimant's failure to obtain treatment [s]he cannot obtain for lack of funds." *See Gamble v. Chater,* 68 F.3d 319, 321 (9th Cir.1995). After a review of the ALJ's decision, there is no indication that the ALJ considered Plaintiff's testimony for not seeking more aggressive treatment.

The Court accordingly finds that Plaintiff's daily activities and gaps in treatment were insufficient to reject Plaintiff's subjective symptom testimony. As such, the ALJ failed to supply clear and convincing reasons to reject Plaintiff's subjective symptom testimony.[6]

---

[5] *See* Tr. 539, 549, 565, 600, 651, 717, 746,787, 788, 952, 958, 987, 999, 1015, 1029, 1094, 1101, 1122, 1129, 1130, 1134, 1156, 1163, 1221,1264, 1268, 1271, 1274, 1357, 1361, 1428, 1455, 1456, 1460, 1485; *see also* Pl.'s Br. at 30, ECF No. 15.

[6] The ALJ discounted the testimony of lay witness Ms. Toni Robinson, stating that her testimony "generally mirrors the claimant's report." Tr. 20.  Accordingly, the Court's analysis in recounting Plaintiff's testimony applies to Ms. Robinson's testimony as well. As such, the Court finds the ALJ lacked a germane reason to discount Ms. Robinson's testimony. *See Rounds v. Comm'r,* 807 F.3d 996, 1007 (9th Cir. 2015) (holding that an ALJ must "provide reasons that are germane to each witness" to reject lay witness testimony).

II.    **Medical Evidence**

Plaintiff contends the ALJ improperly weighed the medical opinion evidence of her

treating psychologist, Dr. Tippett. *See* Pl.'s Br. 17–24, ECF No. 15. The ALJ is responsible for

resolving conflicts in the medical record, including conflicting doctors' opinions. *See Carmickle*

at 1164. The law distinguishes between the opinions of three types of physicians: treating

physicians, examining physicians, and non-examining physicians. *See* 20 C.F.R. §§ 404.1527,

416.927.[7] The opinions of treating physicians are generally accorded greater weight than the

opinions of non-treating physicians. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Lester v.*

*Chater*, 81 F.3d 821, 830 (9th Cir. 1995). A treating doctor's opinion that is not contradicted by

the opinion of another doctor can be rejected only for "clear and convincing" reasons. *Baxter v.*

*Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). Where a doctor's opinion is contradicted,

however, the ALJ must provide "specific, legitimate reasons" for discrediting the opinion.

*Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). An ALJ can meet this burden by "setting

out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his

interpretation thereof, and making findings." *Garrison v. Colvin,* 759 F.3d 995, 1012 (9th Cir.

2014) (internal quotation omitted).

Plaintiff had her initial visit with Dr. Tippett in September 2016. Tr. 1372. From

September 2016 through October 2018, Plaintiff had an additional 71 behavioral health follow-

up appointments with Dr. Tippett.[8] Over the span of two years, Dr. Tippett assessed Plaintiff's

---

[7] The Commissioner has issued revised regulations changing this standard for claims filed after March 27, 2017. *See* 20 C.F.R. § 404.1520c. Plaintiff's claim was filed before March 27, 2017, and therefore is controlled by 20 C.F.R. §§ 404.1527, 416.927.

[8] The dates and transcript citations for Plaintiff's 72 appointments with Dr. Tippett are as follows: September 6, 2016, Tr. 1372; September 12, 2016, Tr. 1363; September 19, 2016, Tr. 1360; September 29, 2016, Tr. 1357; October 4, 2016, Tr. 1354; October 11, 2016, Tr. 1351; October 19, 2016, Tr. 1348; October 25, 2016, Tr. 1345; November 10, 2016, Tr. 1342; November 17, 2016, Tr. 1339; January 5, 2017, Tr. 1326; January 26, 2017, Tr. 1323; January 30, 2017, Tr. 1320; February 9, 2017, Tr. 1318; February 16, 2017, Tr. 1313; February 23, 2017, Tr. 1311;

mental health and chief complaints and provided Plaintiff with support to cope with her recurrent depression and anxiety disorder. *Id.* Based on this extensive treatment history with Plaintiff, Dr. Tippett opined Plaintiff's mental impairments resulted in Category III and Category IV limitations in 19 of 20 categories assessing work-related mental functionality. *Id*. Dr. Tippett noted that Category III precludes performance for 20% of an 8-hour workday while Category IV precludes performance for 30% of an 8-hour workday. Tr. 1384. Dr. Tippett further opined Plaintiff's assessed limitations had been "longstanding" and that Plaintiff was likely to be absent from work for five or more days per month as a result of her serious mental limitations. Tr. 1386–1387.

The ALJ gave Dr. Tippett's opinion "little weight." Tr. 26. Instead, the ALJ assigned "some weight" to consultative psychologist Michelle Whitehead, Ph.D. Tr. 26–27. The ALJ supplied two rationales for rejecting subjective symptom testimony: Inconsistencies in the medical record and Plaintiff's daily activities. Tr. 26.

### A.    Inconsistencies in the Medical Record

The Commissioner asserts the ALJ properly discounted Dr. Tippett's opinion because his "assessments were inconsistent with examination findings" and "[Dr Whitehead's] opinion was

---

March 2, 2017, Tr. 1309; March 9, 2017, Tr. 1299; March 16, 2017, Tr. 1297; March 23, 2017, Tr. 1295; April 12, 2017, Tr. 1279; April 20, 2017, Tr. 1277; April 27, 2017, Tr. 1274; May 4, 2017, Tr. 1271; May 11, 2018, Tr. 1268; May 18, 2017, Tr. 1260; May 25, 2017, Tr. 1257; June 15, 2017, Tr. 1250; June 22, 2017, Tr. 1247; June 29, 2017, Tr. 1244; July 13, 2017, Tr. 1241; July 20, 2017, Tr. 1238; July 25, 2017, Tr. 1235; September 14, 2017, Tr. 1227; September 21, 2017, Tr. 1224; September 28, 2017, Tr. 1221; October 5, 2017, Tr. 1214; October 19, 2017, Tr. 1211; November 2, 2017, Tr. 1208; November 8, 2017, Tr. 1199; November 16, 2017, Tr. 1196; November 30, 2017, Tr. 1193; December 7, 2017, Tr. 1190; December 14, 2017, Tr. 1181; December 19, 2017, Tr. 1178; January 4, 2018, Tr. 1175; January 17, 2018, Tr. 1172; January 25, 2018, Tr. 1169; January 29, 2018, Tr. 1162; February 15, 2018, Tr. 1159; February 22, 2018, Tr. 1156; March 8, 2018, Tr. 1153; March 15, 2018, Tr. 1150; March 22, 2018, Tr. 1147; March 29, 2018, Tr. 1144; April 12, 2018, Tr. 1122; April 19, 2018, Tr. 1127; April 26, 2018, Tr. 1131; May 17, 2018, Tr. 1136; May 24, 2018, Tr. 1137; June 7, 2018, Tr. 1465; June 14, 2018, Tr. 1466; July 12, 2018, Tr. 1471; August 9, 2018, Tr. 1472; August 16, 2018, Tr. 1474; September 25, 2018, Tr. 1479; September 27, 2018, Tr. 1481; October 4, 2018, Tr. 1482; October 11, 2018, Tr. 1487; October 18, 2018, Tr. 1489; October 25, 2018, Tr. 1490; and October 29, 2018, Tr. 1492.

generally consistent with the evidence of record, including the objective findings of the in-person evaluation." *See* Def.'s Br. at 7 ECF No. 16; *see also* Tr. 27.

An internal inconsistency can constitute a specific and legitimate reason to reject a treating provider's opinion. *See Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995). Further, the more consistent the opinion is with the evidence as a whole, the greater weight the opinion should be accorded. 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4).

Here, the ALJ has again failed to identify an actual inconsistency. The ALJ first cited Dr. Tippett's treatment reports that found "while Plaintiff presented with some depression, anxiety, and frustration, the notes generally showed that her mental status examinations were generally within normal limits." Tr. 26. The ALJ also stated that Plaintiff's medical "records [showed] ongoing reports of depression secondary to financial strain and other situation stressors" and that Plaintiff's provider "observed that [Plaintiff] was making progress with treatment." *Id.* Finally, the ALJ noted "there was no evidence that Plaintiff took her frustration out on those around her." Tr. 26–27.

Dr. Tippett's records, however, show Plaintiff's symptoms waxed and waned. The records show that Plaintiff presented at 19 of her mental health treatment appointments as "alert and oriented, present[ing] as very depressed", 22 appointments as "alert and oriented, present[ing] as improved", and 16 appointments as "essentially normal." Tr. 1297–1373; Tr. 1248–1295; Tr. 1122–1138; 1465–1491. The Ninth Circuit has held that "[c]ycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Garrison*, 759 F.3d at 1017 (citing *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001)).

Furthermore, the Commissioner does not provide a compelling argument as to how evidence regarding Plaintiff taking her "frustration out on those around her" is somehow inconsistent with Dr. Tippett's opined limitations.

Accordingly, the ALJ failed to explain an inconsistency in the medical record.

### B.    Daily Activities

The Commissioner next asserts that the ALJ found Dr. Tippett's opinions were "excessive" in contrast to Plaintiff's "difficulty with social interactions, concentration, persistence, and pace." Def.'s Br. at 8, ECF No. 16. The ALJ explained that despite Dr. Tippett's observations, the evidence in the record showed that Plaintiff "cared for her daughter, drove, traveled, and was an assistant coach for a softball team." Tr. 27. The ALJ concluded that "such activities of daily living reasonably showed that Plaintiff was not as limited as suggested by Dr. Tippett." *Id.*

In some circumstances, an inconsistency between a treating provider's opinion and a claimant's daily activities may constitute a specific and legitimate reason to discount that opinion. *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (citation omitted). Here, however, Plaintiff's limited daily activities are insufficient to justify discounting Dr. Tippett's opinion because they do not conflict with the doctor's opinion.

First, the ALJ simply reiterates Plaintiff's activities rather than explain with specificity how childcare, driving, and traveling conflicts with Dr. Tippett's opinion. Tr. 24 The mere fact that Plaintiff cares for her daughter "does not constitute an adequately specific conflict with [Plaintiff's] limitations." *Trevizo v. Berryhill,* 871 F.3d 664, 682 (9th Cir. 2017) (holding that without information in the record about a plaintiff's childcare activities, the mere recitation of the fact does not identify a conflict with a doctor's opinion).

As to driving, Plaintiff noted that her driving was "limited due to medications and sedation and vertigo." Tr. 396. Plaintiff's limitations are consistent with Dr. Tippett's consideration of Plaintiff's depression, pain, and medication side effects. Tr. 454 (listing medication side effects of "fatigue" and "drowsiness"). Moreover, the Ninth Circuit has repeatedly asserted that "the mere fact that a plaintiff has carried on certain daily activities. . . does not in any way detract from [their] credibility to [their] overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 1986); *see also Reddick v. Chater,* 157 F.3d 715, 722 (9th Cir. 1998) (requiring the level of activity be inconsistent with the plaintiff's claimed limitations to be relevant to their credibility and noting that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations").

The ALJ's listing of Plaintiff's five-day cruise to Mexico is also insufficient in this case to show an inconsistency with the medical record. Tr. 24. The Ninth Circuit held previously in *Tommasetti v. Astrue* that the ability to travel could allow an ALJ to properly infer that claimants are not physically limited as they purport to be. *See Tommasetti v. Astrue,* 533 F.3d 1035 (9th Cir. 2008). This case, however, differs from *Tommasetti* in two significant ways: (1) the plaintiff in *Tommasetti* went on an extended trip to Venezuela to care for an ailing sibling; and (2) the plaintiff's physician only limited him from "strong physical work" after his travel. *Id.* at 1040. Here, Plaintiff did not travel to care for anyone—on the contrary, she traveled in attempt to take care of herself. Tr. 1295 (report in which Plaintiff discussed how she can "fully enjoy her upcoming vacation despite anxiety and depression"). Moreover, Dr. Tippett was aware of Plaintiff's plans to take a five-day cruise and still assessed Plaintiff with marked Category III and IV limitations. Tr. 1295, 1279. Accordingly, *Tommasetti* is not applicable here.

Finally, the ALJ lists Plaintiff's "help[ing] coach softball" as an identified inconsistency. Tr. 24. As discussed previously, Plaintiff explained that she had discussed with her treating psychologist the prospect of becoming an active softball coach to reduce stress, but ultimately did not end up pursuing the role because of her depression. Tr. 55–56; *see also* Pl.'s Br. 22–23, ECF No. 15.

Because the ALJ was unable to identify an acceptable inconsistency, the ALJ failed to provide a specific and legitimate reason to discount the opinion of treating psychologist, Dr. Tippett. *Garrison,* 759 F.3d at 1012–1013 (holding that an ALJ errs when [they] reject or assign a medical opinion little weight by criticizing it with boilerplate language that fails to offer a substantive basis for [their] conclusion) (internal quotation omitted).

## III.    Step Five Finding

Plaintiff assigns error to the ALJ's step five finding. Pl.'s Br. at 34–35, ECF No. 15. Specifically, Plaintiff contends that the ALJ's RFC, failed to include "limitations established by Dr. Tippett, Ms. Robinson, and [Plaintiff's] own improperly rejected testimony." *Id.* The Commissioner, citing *Bayliss v. Barnhart,* argues that because the hypothetical the ALJ posed to the VE contained all the limitations that ALJ found credible and supported by substantial evidence, the hypothetical was proper. *See* Def.'s Br. at 10, ECF No. 16; *see also Bayliss v. Barnhart,* 427 F.3d 1211 (9th Cir 2005) (internal quotations omitted).

Ultimately, the Court need not resolve the parties' competing arguments. An ALJ may rely on the testimony of a VE at step five. 20 C.F.R. §§ 404.1566, 416.966. However, an ALJ may rely on a VE's testimony only where such testimony is based on a hypothetical that "contain[s] all of the limitations that the ALJ found credible and was supported by substantial evidence in the record." *Bayliss,* 427 F.3d at 1217. Where an ALJ's hypothetical is based on a

residual functional capacity assessment that does not include some of the claimant's limitations, the VE's testimony "has no evidentiary value." *Carmickle* 533 F.3d at 1166.

Given the ALJ's errors in weighing subjective symptom testimony and the medical evidence as discussed above, the VE's opinion in this case lacks evidentiary value. *Carmickle*, 533 F.3d at 1166; *see also Ghanim*, 763 F.3d 1154, 1166 (9th Cir. 2014) (explaining that an ALJ's RFC determination is flawed where the ALJ improperly discounted medical evidence and therefore the reliance on the corresponding VE opinion was error). Accordingly, the ALJ's step five finding is not supported by substantial evidence and remand is the appropriate remedy.[9]

## IV.    Remand

A reviewing court has discretion to remand an action for further proceedings or for a finding of disability and an award of benefits. *See, e.g., Stone v. Heckler*, 761 F.2d 530, 533 (9th Cir. 1985). Whether an action is remanded for an award of benefits or for further proceedings depends on the likely utility of additional proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000). In determining whether an award of benefits is warranted, the court conducts the "three-part credit-as-true" analysis. *Garrison*, 759 F.3d at 1020. Under this analysis the court considers whether: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed and further proceedings would serve no useful purpose; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *See Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015).

Here, the first requisite is met based on the errors discussed above. The ALJ failed to provide legally sufficient reasons for discounting the medical opinion of treating psychologist

---

[9] The Court need not discuss whether ALJ *de facto* reopened the determinations on Plaintiff's prior applications for SSI and DIB to reach its analysis and conclusion on remand, and therefore declines to do so.

Dr. Tippett. The ALJ also failed to provide legally sufficient reasons for discounting the subjective symptom testimony of Plaintiff and lay witness Ms. Toni Robinson.

As to the second requisite, the Ninth Circuit has held that remanding for proceedings rather than for an immediate payment of benefits serves a useful purpose where "the record has [not] been fully developed [and] there is a need to resolve conflicts and ambiguities." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014) (internal quotations and citations omitted). Here, the Court finds that the record would benefit from further development. For example, the ALJ neither properly weighed the medical opinion of Dr. Tippett, nor did the ALJ meaningfully address the limitations opined by Dr. Tippett. Furthermore, the ALJ relied on VE testimony that did not account for the full extent of Plaintiff's limitations. Because the ALJ did not include these limitations in the RFC or ask the VE whether Plaintiff's limitations, as described by Dr. Tippett's medical opinion, would allow her to sustain employment, remand is required to further develop the evidentiary record.

Accordingly, this case is remanded for further administrative proceedings to: (1) reevaluate Plaintiff's subjective symptom testimony and Ms. Robinson's lay witness testimony; (2) conduct a *de novo* review of the medical opinion evidence; (3) obtain additional VE testimony based on a reformulated RFC**;** and (4) conduct any further necessary proceedings. *See Burrell v. Colvin*, 75 F.3d 1133, 1141 (9th Cir. 2014).

## CONCLUSION

For the reasons above, the Commissioner's decision was not based on  substantial evidence. Accordingly, the Commissioner's decision is REVERSED and this case REMANDED pursuant to 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Opinion and Order.

IT IS SO ORDERED.

DATED this <u>2nd</u> day of March 2021.


<u>s/ Mustafa T. Kasubhai</u>
MUSTAFA T. KASUBHAI (He / Him)
United States Magistrate Judge